UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS EUCEDA MARTINEZ<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.: 25-CV-3308 JLS (MSB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Jose Luis Euceda Martinez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Christopher LaRose's (Senior Warden, Otay Mesa Detention Center); Patrick Divver's (Field Office Director, San Diego Office of Detention and Removal); Todd Lyons's (Acting Director, U.S. Immigration and Customs Enforcement); and Kristi Noem's (Secretary, U.S. Department of Homeland Security) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 6) and Petitioner's Traverse ("Traverse," ECF No. 7). For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

/ / /

/ / /

# BACKGROUND

Petitioner, a Honduras citizen and national, entered the United States on July 9, 2023, using the CBP One app and was released on humanitarian parole that expired on July 7, 2025. Pet. ¶¶ 64, 115. Petitioner fled Honduras due to persecution "on account of his membership in particular social grounds by the MS-13 gang." *Id.* ¶ 62. Since then, Petitioner has lived in the United States without issue. *Id.* ¶ 4. He has attended "one or more master calendar hearings," missing one due to a mistaken date, works in construction, and has applied for asylum. *Id.* ¶¶ 21, 65. As a result of his missed hearing date, an in-absentia order of removal was entered against him, which Petitioner's then counsel contested. ECF No. 10 at 2 ("Pet. Supp. Brief"). Petitioner's then counsel filed a Motion to Rescind in Absentia Removal Order and Reopen Criminal Proceedings, which was granted—resulting in Petitioner's deportation order being vacated. *Id.* Petitioner was subsequently detained by ICE on June 12, 2025, at the San Diego Immigration Court while appearing for a master calendar hearing. ECF No. 9 at 1–2 ("Resp. Supp. Brief"). Petitioner now challenges his re-detention absent notice or evidence of changed circumstances.[1] *See* Pet. ¶¶ 83, 115.

# LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial

---

[1] There is a dispute between the Parties about the status of Petitioner's parole at the time of his arrest. Respondents assert that his parole expired on April 18, 2025—prior to his arrest on June 12, 2025. Resp. Supp. Brief at 1. Petitioner asserts that his parole was valid through July 7, 2025, and that it was incorrectly and retroactively modified to April 18, 2025. Pet. Supp. Brief at 2–3. Petitioner states that when the Immigration Judge vacated the in-absentia removal order, "the legal effect was to nullify the removal order as if it never existed." *Id.* at 3. Thus, reverting Petitioner back to the pre-order posture—including the status of his parole. *Id.* Respondents, despite having the best access to Petitioner's immigration records, do not provide any documentation of this series of events, nor do they address the change in parole expiration dates. *See generally* Docket. Therefore, the Court will treat July 7, 2025, as the expiration date of Petitioner's parole.

body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Respondents first argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g) and § 1225 (b)(9) and that Petitioner failed to exhaust his administrative remedies.  Ret. at 9–12.  Respondents then argue, if the Court finds jurisdiction and waives exhaustion, that Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.  *Id.* at 12–17.  Petitioner argues that the summary revocation of his parole and continued detention violates Due Process, the Fourth Amendment, and the Administrative Procedure Act.  Pet. at 15–22.

### I. Jurisdiction

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  Respondents claim that Petitioner's claims "necessarily arise from the decision or action by the Attorney General to commence proceedings and adjudicate cases."  Ret. at 9 (simplified).  The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-*

1  *Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not
2  prohibit challenges to unlawful practices merely because they are in some fashion
3  connected to removal orders." *Id.* at *7.  Section 1252(g) does not bar due process claims.
4  *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners'
5  objective was not to review the merits of their proceeding, but rather "to enforce their
6  constitutional rights to due process in the context of those proceedings").

7       Here, Petitioner does not challenge the decision to commence removal proceedings
8  or any act to adjudicate or execute a removal order.  Rather, Petitioner is challenging the
9  legality of his parole revocation, alleged wrongful arrest, and continued detention.  Pet. at
10  19–20.  Petitioner is enforcing his "constitutional rights to due process in the context of the
11  removal proceedings—*not* the legitimacy of the removal proceedings or any removal
12  order."  *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D.
13  Cal. Sept. 3, 2025).  Therefore, § 1252(g) does not strip the Court of jurisdiction.  *See, e.g.*,
14  *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629, at *2 (S.D.
15  Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter); *Noori v. Larose*
16  *et al.*, 25-cv-1824 GPC (MSB), 2025 WL 2800149, at *7–8 (S.D. Cal. Oct. 1, 2025) (same).

17       Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact,
18  including interpretation and application of constitutional and statutory provisions, *arising*
19  *from any action taken or proceeding brought to remove an alien from the United States*
20  under this subchapter shall be available only in judicial review of a final order under this
21  section."  8 U.S.C. § 1252(b)(9) (emphasis added).  Respondents argue that Petitioner is
22  challenging "the government's decision and action to detain" during removal proceedings.
23  Ret. at 12.  Respondents assert that the decision to detain Petitioner arises from the
24  "decision to commence removal proceedings" and thus is "an action taken . . . to remove
25  [him] from the United States." *Id.* (quoting 8 U.S.C. § 1252(b)(9)).  Respondents conclude
26  that the Court lacks jurisdiction under § 1252(b)(9).  *Id.*  Again, the Court disagrees.

27       Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of
28  or collateral to the removal process do not fall within the scope" of § 1252(b)(9).

*Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted)). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 2025 WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583 U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to the decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. Petitioner is instead challenging the Respondents' re-detention and revocation of his conditional parole. Pet. at 19–20. Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## II.     Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d

874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Garcia*, 2025 WL 2549431, at *4–5; *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025). Therefore, the Court concludes that exhausting administrative remedies would be futile.

### III. Merits

#### *A. Due Process*

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. 16–19. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July

25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225 Petitioner is subject to mandatory detention and therefore his alleged statutory and constitutional violations fail.[2] Ret. at 12. The Court disagrees. Upon arrival, Petitioner was determined to not be a danger to the community or a flight risk and was released on humanitarian parole which was valid until July 7, 2025. Pet. Supp. Brief at 2. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since July 2023. *Id.* Petitioner has complied with all conditions of his release and has attended nearly all required ICE check-ins and court hearings.[3] *Id.* Petitioner works in construction, has two children, has no criminal history, and has applied for asylum. Pet. at 7. Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest

---

[2] If Respondents unlawfully terminated Petitioner's parole, which the Court finds to be so, then the Court need not address whether Petitioner is subject to mandatory detention under § 1225(b), as Respondents cannot detain him without first properly revoking his parole. *See Y-Z-L-H v. Bostock*, No. 25-cv-965-SI, 2025 WL 1898025, at *11 (D. Or. July 9, 2025).

[3] As discussed above, Petitioner mistakenly missed one required court date, but that error and the consequences thereof have already been resolved. Pet. Supp. Brief at 2.

7

in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family and continuing to seek asylum. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an

opportunity to be heard. Pet. at 22. Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, works in construction, and is working towards asylum status. Pet at 6–7. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances— namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole. *See generally* Ret. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v.*

*Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[4]

### B. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 34. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner

---

[4] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").

from custody subject to the conditions of his preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[5] The Parties are **ORDERED** to file a Joint Status Report by December 23, 2025, confirming that Petitioner has been released. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within thirty (30) days of this Order, and Respondents are instructed to file any opposition within fourteen (14) days of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

December 18, 2025

Hon. Janis L. Sammartino
United States District Judge

---

[5] This relief has been granted in similar matters. *See, e.g., Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).